UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00377-SI |
| v. | **INFORMATION** |
| **THEODORE JOHNSON,** | 18 U.S.C. § 1344(2) |
| **Defendant.** | |

**THE UNITED STATES ATTORNEY CHARGES:**

**INTRODUCTORY ALLEGATIONS**

**At all times relevant to this Information:**

    1.    Defendant **THEODORE JOHNSON** was a resident of Beaverton, Oregon.

    2.    **JOHNSON** was the founder of Ten Penny International Housing Foundation ("Ten Penny"). He incorporated Ten Penny in the State of Oregon as a domestic nonprofit corporation on or about February 15, 2017. In the Articles of Incorporation filed with the Oregon Secretary of State on that date, **JOHNSON** was named as Ten Penny's incorporator and director of operations. In subsequent amended reports filed with the Oregon Secretary of State,

**Information**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 1**
Revised April 2018

**JOHNSON** was named as Ten Penny's president, executive director, board chairman, registered agent, and CEO.

3. The Internal Revenue Service granted Ten Penny 501(c)(3) tax exempt status on or about June 12, 2017.

The CARES Act

4. On March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law. That statute created the Paycheck Protection Program ("PPP"), which authorized the Small Business Administration ("SBA") to guarantee loans of up to $10,000,000 to qualifying employers without collateral or personal guarantees from the borrowers. The CARES Ac required lenders making loans under the PPP to defer all repayment obligations for not less than six months on such loans and required borrowers to certify, among other things, that the borrowed "funds [would] be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." Loans used for such authorized purposes were eligible for forgiveness, that is, to be repaid by the United States rather than the borrower.

5. In order to obtain a PPP loan, an applicant's authorized representative had to provide information about the applicant's operations, such as the beginning date of operation, number of employees, and average payroll expenses. These figures were used to calculate the size of the PPP loan the applicant was eligible to receive.

6. Applicants for PPP loans were also generally required to submit documents corroborating their qualifying payroll expenses. To satisfy this requirement, applicants typically supplied documents showing the amount of payroll expenses and tax withholdings reported to the IRS.

7. The authorized representative of PPP loans also had to make various certifications, including that all information in the application and submitted with the application was true and correct in all material respects.

8. Northeast Bank and Central Willamette Credit Union were participating lenders in the PPP. Their deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

## COUNT 1
**(Bank Fraud)**
**(18 U.S.C. § 1344(2))**

9. The allegations in paragraphs 1 through 8 of this Information are incorporated as though realleged herein.

**THE SCHEME**

10. From not later than February 2021 and continuing through at least May 2021, defendant **JOHNSON** devised and intended to devise a material scheme to obtain funds under the custody or control of Northeast Bank and Central Willamette Credit Union, both federal insured financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

11. Specifically, **JOHNSON** applied for and obtained PPP loans by making materially false representations about Ten Penny's operations, as well as the uses to which he would put the proceeds of said loan.

**MANNER AND MEANS**

It was part of this scheme that:

12. On or about March 15, 2021, **JOHNSON**, acting on behalf of Ten Penny, submitted application number 26454621 to Northeast Bank for a PPP loan in the amount of

$143,065 ("APPLICATION 1").  On APPLICATION 1, **JOHNSON** claimed 20% ownership of Ten Penny.

13. On APPLICATION 1, **JOHNSON** falsely claimed that Ten Penny employed 16 employees and that the company's "Average Monthly Payroll" was $57,226.  All these representations were false.

14. To corroborate these false claims, **JOHNSON** submitted to Northeast Bank a fraudulent 2019 Return of Organization Exempt from Income Tax (IRS Form 990-EZ), for Ten Penny.  **JOHNSON** used a counterfeit IRS stamp to indicate this document had been submitted to the IRS.  **JOHNSON** purportedly signed the fraudulent 2019 IRS Form 990-EZ on October 6, 2020.

15. The fraudulent 2019 IRS Form 990-EZ reported that Ten Penny's total revenue was $785,303.  It identified nine individuals for eleven positions under Part IV, Officers, Directors, Trustees, and Key Employees and reported that those individuals received between $67,200 to $98,808 per year.  All these representations were false.

16. **JOHNSON** signed the true 2019 IRS Form 990-EZ that was submitted to the IRS on October 6, 2020.  It reported $23,217 in total revenue and $23,217 in total expenses.  It identified six individuals under Part IV, Officers, Directors, Trustees and Key Employees and reported that none of those individuals received reportable compensation.

17. To further corroborate the false claims on APPLICATION 1, **JOHNSON** submitted to Northeast Bank a 2019 Employer's Annual Federal Unemployment Tax Return (IRS Form 940), for Ten Penny, reporting $624,482.37 in total payments to all employees.  This representation was false.

18.     To further corroborate the false claims on APPLICATION 1, **JOHNSON** submitted to Northeast Bank five Employer's Quarterly Federal Tax Return (IRS Form 941), which reported:

| Reporting Period | Employees | Wages, Tips, and Compensation |
|---|---|---|
| January-March 2019 | 9 | $109,451.34 |
| April-June 2019 | 9 | $171,677.01 |
| July-September 2019 | 9 | $171,677.01 |
| October-December 2019 | 9 | $177,677.01 |
| October-December 2020 | 2 | $0 |

These representations were false.

19.     Based on the false information and the forged document provided in APPLICATION 1, Northeast Bank approved the requested PPP loan and deposited $143,065 to Northeast Bank account ending in 8509 on or about March 23, 2021.

20.     On or about May 10, 2021, **JOHNSON**, acting on behalf of Ten Penny, submitted application number 30670863 to Central Willamette Credit Union for a PPP loan in the amount of $150,000 ("APPLICATION 2").  On APPLICATION 2, **JOHNSON** claimed 20% ownership of Ten Penny.

21.     On APPLICATION 2, **JOHNSON** falsely claimed that Ten Penny employed 16 employees and that the company's "Average Monthly Payroll" was $50,000.  On APPLICATION 2, **JOHNSON** further falsely claimed that Ten Penny's 2019 Quarter Gross Receipts were $785,303.23 and that Ten Penny's 2020 Quarter Gross Receipts were $54,954.45. All these representations were false.

22. On or about May 17, 2021, **JOHNSON**, acting on behalf of Ten Penny, submitted an amended application under application number 30670863 to Central Willamette Credit Union for a PPP loan in the amount of $130,100.50 ("AMENDED APPLICATION 2"). On AMENDED APPLICATION 2, **JOHNSON** claimed 20% ownership of Ten Penny.

23. On AMENDED APPLICATION 2, **JOHNSON** falsely claimed that Ten Penny employed 16 employees and that the company's "Average Monthly Payroll" was $52,040.20. On AMENDED APPLICATION 2, **JOHNSON** further falsely claimed that Ten Penny's 2019 Quarter Gross Receipts were $785,303.23 and that Ten Penny's 2020 Quarter Gross Receives were $54,954.45. All these representations were false.

24. Based on the false information in AMENDED APPLICATION 2, Central Willamette Credit Union approved the requested PPP loan and deposited $130,100 funded on or about May 17, 2021, to a Central Willamette Credit Union business account for Ten Penny International, account ending 50-153.

## BANK FRAUD

25. Beginning on or about February 15, 2021, and continuing at least through May 17, 2021, in the District of Oregon and elsewhere, **THEODORE JOHNSON**, defendant herein, did execute a scheme or artifice to obtain funds under the custody or control of Northeast Bank, a federal insured institution, by means of materially fraudulent pretenses, in that defendant applied for and obtained a PPP loan of $143,065 while knowingly and willfully misrepresenting Ten Penny's operations and payroll, and the purposes to which defendant would put the proceeds of such loan.

In violation of Title 18, United States Code, Section 1344(2).

## FORFEITURE ALLEGATION

26. Upon conviction of the fraud offense alleged in this Information, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any and all property, real or personal, involved in or derived from said offense and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

27. If the above-described forfeitable property, as a result of any act or omission of defendant:

   a) cannot be located upon the exercise of due diligence;

   b) has been transferred or sold to, or deposited with, a third party;

   c) has been placed beyond the jurisdiction of the court;

   d) has been substantially diminished in value; or

   e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: October 31, 2022     Respectfully submitted,

NATALIE K. WIGHT
United States Attorney


*/s/ Meredith D.M. Bateman*
MEREDITH D.M. BATEMAN, OSB #192273
Assistant United States Attorney